UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:93-cr-00035-HDM |
| Plaintiff, | |
| v. | ORDER |
| MARK LEE MURRAY, | |
| Defendant. | |

Defendant Mark Lee Murray has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF Nos. 101 & 104). The government has opposed (ECF No. 107), and Murray has replied (ECF No. 109).

On May 10, 1993, Murray stole a Corvette during a test drive. Pulling a gun from his waistband, Murray told the salesman that he would be taking the car and that the salesman would be taken care of once Murray found a secluded spot. Fearing he was going to be killed, the salesman jumped from the car when Murray slowed down to 45 miles per hour for another vehicle. His fall from the moving vehicle resulted in several substantial and serious injuries.

Murray crashed the vehicle into a snowbank and then made his way to South Lake Tahoe where, the following day, he knocked on the door of a home, pointed a gun at the woman who answered, and told her he needed a car. As she went inside to get her key, Murray followed. The victim gave Murray the key, and Murray then tied the

1

victim up with phone cords as her two young children watched. After he left, Murray noticed the three-year-old trying to loosen the restraints, so he went back in and tightened them.

Murray was later apprehended and indicted and, following a jury trial, convicted in Nevada on one count of carjacking in violation of 18 U.S.C. § 2119 and one count of use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1). He was also indicted and, following a jury trial, convicted in California of felon in possession of a firearm, use of a firearm during and in relation to a crime of violence, and carjacking. In that case, Murray was sentenced to 144 months in prison. This court then sentenced Murray to a term of 180 months on the carjacking conviction, concurrent with the California sentence, and a consecutive term of 240 months on the firearm conviction.

Murray now seeks compassionate release based on the COVID-19 epidemic, his underlying health conditions, and the length of time he has been in custody.[1]

**Standard**

18 U.S.C. § 3582(c)(1)(A) provides in relevant part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

---

[1] The defendant's *pro se* motion relies not on these factors but instead on a change to the law of § 924(c) under the First Step Act. But "neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Saldana*, 807 Fed. App'x 816 (10th Cir. 2020). Moreover, while the First Step Act explicitly made certain of its provisions retroactively applicable, the change to § 924(c) was not one of them.

bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction;

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]

U.S.S.G. § 1B1.13 provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) extraordinary and compelling reasons warrant the reduction;

. . .

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

_____

[2] In addition to "extraordinary and compelling reasons," the court may grant a motion if "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii). Because Murray is not over 70 years of age and has not served more than thirty years in prison, this provision does not apply.

3

U.S.S.G. § 1B1.13.

The defendant is not entitled to be present for a hearing on a motion for compassionate release. *See* Fed. R. Crim. P. 43(b)(4).

**Analysis**

Murray seeks compassionate release due to his underlying health conditions, the COVID-19 pandemic and the length of time he has served toward his sentence. The government opposes, arguing that Murray had not exhausted his institutional remedies before filing the motion, does not have a condition or combination of conditions that puts him at elevated risk for severe COVID-19 complications, and remains a danger to the community.

**A. Exhaustion**

Before a defendant may file a § 3582(c)(1)(A) motion, he must either (1) exhaust any administrative appeals of the warden's refusal to bring a motion or (2) wait thirty days from the warden's receipt of the request, whichever is earlier. Murray's counsel submitted a request for compassionate release to the warden on May 19, 2020.[3] Thirty days have elapsed from the date Murray's request was submitted, so Murray's motion is exhausted.[4]

---

[3] Murray also submitted a request for compassionate release on January 10, 2020. (ECF No. 101 at 32). As with his *pro se* motion, Murray's January request was not based on his medical condition. Because the government does not dispute that Murray's request for compassionate release has otherwise been exhausted by counsel's email to the warden on May 19, 2020, the court does not reach the question of whether the January request was sufficient to exhaust with respect to the instant motion.

[4] There is no indication on the record that the warden has responded to Murray's May 19, 2020, request.

**B. Extraordinary and Compelling Reasons**

Section 1B1.13 sets forth specific examples of "extraordinary and compelling reasons," including in relevant part that the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.(1)(A)(ii)(I). There is also a catch-all provision, which provides: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* app. n.(1)(D).

Preliminarily, the government suggests that a finding under the catch-all provision must be made by the Director of Prisons. (ECF No. 107 at 16). While the district courts have split on this question, this court agrees with the well-reasoned decisions that district courts may base a finding of extraordinary and compelling reasons on the catch-all provision. *See United States v. Etzel*, 2020 WL 2096423, at *3 (D. Or. May 1, 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases); *United States v. Redd*, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) ("Application Note 1(D)'s prefatory language, which requires a [catchall] determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance.... [R]estricting the Court to those reasons set forth in § 1B1.13 cmt. n.1(A)-(C) would effectively preserve to a

1   large extent the BOP's role as exclusive gatekeeper, which the
2   First Step Act substantially eliminated.").

3       Nevertheless, the court finds that extraordinary and
4   compelling reasons do not exist in this case, even under the catch-
5   all provision alone or in combination with the other provisions of
6   application note 1. Murray, who is 53, is not part of a higher-
7   risk age group. Although he is borderline obese,[5] has
8   hyperlipidemia and has a fatty liver that functions abnormally,
9   these conditions do not appear to be severe. While Murray may have
10  a history of hypertension, it appears to be well controlled, as
11  all his recent readings have been normal. Murray was perhaps pre-
12  diabetic at one point, since that time he has lost weight and there
13  is no indication that he currently has diabetes. (*See* ECF No. 105-
14  1). Although Murray's ailments certainly relate to risk factors,
15  there is no indication in the record that the conditions are not
16  well controlled or are severe and therefore likely to substantially
17  elevate his risk of complications from the coronavirus. The court
18  therefore concludes that extraordinary and compelling reasons do
19  not exist in this case.

20      **C. Danger to the Community**

21      Even if Murray's medical conditions in the context of the
22  COVID-19 epidemic did constitute extraordinary and compelling
23  reasons, the Guidelines provide that an inmate may be granted
24  compassionate release only if he is not a danger to any other
25  person or to the community, as provided in 18 U.S.C. § 3142(g).

26

27  [5] Based on Murray's latest recorded weight of 252 pounds, and his
    stated height of 6'2", his BMI is at or around 32. (ECF No. 105 at
28  139).

*United States v. Johnson*, 2020 WL 2114357, at *1 (E.D. Wash. May 4, 2020) ("[T]he Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act."). Under § 3142(g), the court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The government asserts that there is a serious question as to whether Murray is still a danger to the community based both on the violent nature of his offenses and his prior criminal history. Murray disputes that he is a danger to any person or to the community, pointing to his rehabilitation while incarcerated, firm release plan, and the mitigating aspects of his original offenses,

as evidenced in a letter written by the victim of the California carjacking. (ECF No. 104 (Ex. D)).

There is no question that Murray's offenses were violent and serious. Murray told the victim that he would take care of him, which any reasonable person under the circumstances would have construed as a threat of death. Further, Murray refused to take responsibility for his actions by testifying falsely at trial that he did not carjack the vehicle. He received an enhancement for obstruction of justice for such perjury. Moreover, Murray had a substantial and continuous criminal history before the crimes that are the subject of this case. In view of the circumstances of the offense, Murray's criminal history, and his refusal to accept responsibility for his actions, the court concluded that Murray should receive the maximum sentence for his offenses. At the time, Murray clearly posed a danger to the community. The court is not persuaded that Murray, if released at this time, would no longer pose a risk to the community.

**D. 18 U.S.C. § 3553(a) Factors**

Finally, the factors under § 3553(a) do not support early release, either. As discussed, the nature and circumstances of the offenses were serious, and at the time he committed the crimes, Murray had a substantial criminal history.  The court believes that Murray should serve the full sentence which was imposed in order to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentencing disparities.

**Conclusion**

In accordance with the foregoing, Murray's motion for compassionate release (ECF Nos. 101 & 104) is hereby DENIED.

IT IS SO ORDERED.

DATED: This 19th day of August, 2020.

_Howard D McKibben_
_____
UNITED STATES DISTRICT JUDGE